# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| PERRY JOE PATTERSON, #1673121, | § | |
| **Petitioner,** | § | |
| | § | |
| v. | § | **Civil No. 3:15-CV-0322-B-BK** |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Div.,[1] | § | |
| **Respondent.** | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 was referred to the United States Magistrate Judge. For the reasons that follow, it is recommended that the petition be **DENIED**.

## I. BACKGROUND

In 2010, Petitioner was convicted of murder and sentenced as a habitual offender to 99 years' imprisonment. *State v. Patterson*, Nos. F08–11133 (203rd Jud. Distr. Ct, Dallas County, Sep. 20, 2010), *aff'd*, 2012 WL 3024220 (Tex. App.—Dallas 2012, pet. ref.), *cert. denied*, 133 S.Ct. 2346 (2015). The Texas Court of Criminal Appeals subsequently denied state habeas relief. *See Ex parte Patterson*, No. WR-80,677-01, Doc. 14-1 at 1 (Tex. Crim. App. Jan 14, 2015) (denial without written order).[2]

---

[1] In May 2016, Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Under Rule 25(d) of the Federal Rules of Civil Procedure, Davis was "automatically substituted as a party."

[2] The state habeas court record is available at Doc. 14-14 and Doc. 14-13, the clerk's record is available at Doc. 13-2, and the reporter's stenograph record of the trial and related proceedings is available at Doc. 13-5 through Doc. 13-11.

In his 28-ground federal petition, Petitioner asserts trial errors, prosecutorial misconduct, and jury transgressions.  He also claims he was denied a "special needs" counsel, the effective assistance of counsel, the right of self-representation, prescription medication, and the right to a speedy trial.  Doc. 1 at 6-15; Doc. 6 at 1-10.  Respondent argues all claims lack merit.  Doc. 11, and Petitioner has filed a reply.  Doc. 35.

## II. ANALYSIS

Petitioner is not entitled to habeas corpus relief unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Petitioner bears the burden of establishing that he is entitled to relief.  *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).  However, that burden is "difficult to meet," as the decision of the state court is reviewed under a highly deferential standard" and afforded the "benefit of the doubt."  *Harrington v. Richter*, 562 U.S. 86, 102, 105 (2011); Woodford, 537 U.S. at 24 (citation and internal quotation marks omitted).  The deferential standard of review applies even where the state court, as in this case, summarily denied all claims in part without written order (except for one that was remanded for an evidentiary hearing).  *See Richter*, 131 S. Ct. at 785 ("§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

1. Pretrial and *Voir Dire* Issues (Claims 1, 2, 8)[3]

Before jury selection, while admonishing Petitioner regarding the ranges of punishment he faced upon conviction, the trial judge erroneously stated that Petitioner would not be eligible for parole until he had "serve[d] one half of his calendar time . . . or two years, whichever is less."[4]  Doc. 13-6 at 6-7.   Petitioner alleges that the court's misstatement regarding parole eligibility "coerc[ed] [him] to reject the plea bargain."  Doc. 1 at 6.  However, it is clear from the record that the trial court's misstatement as to parole eligibility occurred as it explained the charge and summarized the range of punishment prior to the start of a jury trial, and not while Petitioner was contemplating a 40-year plea bargain which he, contemporaneously with the errant instruction, confirmed he had already rejected.  Immediately after the misstatement, Defendant confirmed that he had "chosen to go with a jury trial," and the Court noted that the case was indeed set for jury trial and that the venire was already waiting in the hallway.  Doc. 13-6 at 7.  The Court then inquired whether a plea offer was ever extended in the case, after which Petitioner confirmed his rejection of the offer and his desire to proceed to trial.  *Id.*  Thus, the record wholly contradicts Petitioner's assertions in his reply that the trial judge's misstatement regarding parole eligibility was coercive.  Doc. 35 at 5.

Petitioner also complains that the trial judge and prosecutor misinformed the venire that the imprisonment range for the charged offense was 25 to 99 years, Doc. 13-6 at 22-23, 72-74,

---

[3] The Court references the claims by the number in the federal petition and brief in support.

[4] The trial judge clearly intended to state that, upon a finding that the murder involved the use of a deadly weapon, Petitioner would not be "eligible for release on parole until [his] actual calendar time served, without consideration of good conduct time, equals one-half of the sentence or 30 calendar years, whichever is less, but in no event is the inmate eligible for release on parole in less than two calendar years.  Tex. Gov't Code Ann. § 508.145.

87, rather five to 99 years.  Doc. 1 at 6.   Petitioner is wrong.  The maximum imprisonment range

for the offense charged by the Indictment was indeed 25 to 99 years, since Petitioner was also

charged as a habitual offender.  *See* Doc. 14-14 at 102 (Indictment); TEX. PEN. CODE § 12.42(d)

(setting out the range of punishment for repeat and habitual felony offenders).  Since the jury

sentenced Petitioner at the very top of the imprisonment range, there is no evidence that

misstating the lower end of the range had a "substantial and injurious influence or effect" on the

jury verdict.  Stated differently, by its choice of the maximum term of 99 years, the jury made

clear that it did not consider a sentence as low as 5 to 24 years' imprisonment appropriate.  *See*

*Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (holding a constitutional error is cause for

federal habeas relief only if it has a "substantial and injurious effect or influence in determining

the jury's verdict.").  The state court's denial of these grounds was a reasonable application of

federal law.

In a separate but related claim, Petitioner contends that based on the alleged

misstatements as to the range of imprisonment during voir dire, a venireman suggested Petitioner

was a "three time loser," allegedly "depriving [Petitioner] of the presumption of innocence" and

"allowing a biased juror to infect the entire jury pool."   Doc. 1 at 7; Doc. 6 at 3; Doc. 13-6 at 78-

79.  Petitioner's claim finds no support in the record, however; While a venireman (who was

later selected to serve on the jury) indicated his belief that the imprisonment range was five to 99

years, the prosecutor correctly advised him that range was inapplicable without going into details

about the habitual offender statute, which would have been improper during *voir dire*.  Doc. 13-6

at 78; *see* TEX. PEN. CODE § 12.32 (setting out the range of punishment for a first degree felony).

Accordingly, Petitioner's first, second and eighth claims fail.

2. <u>Right to Self-Representation</u> (Claims 3-7)

Petitioner asserts the trial court violated his Sixth Amendment right to self-representation by failing to rule on his *pro se* motions to represent himself and "by making derogatory comments to coerce MHMR Petitioner to accept unwanted ineffective counsel."  Doc. 1 at 7.  He also complains that the court did not rule on his request "for special needs counsel," and that appellate counsel filed a petition for discretionary review (PDR) without first seeking his consent, thereby preventing him from filing a *pro se* PDR.  Doc. 1 at 8.

Before *voir dire*, defense counsel, Mr. Weatherspoon, informed the court of Petitioner's desire to examine some of the witnesses himself and of Petitioner's earlier, *pro se* motion requesting permission to represent himself.  Doc. 13-6 at 8; Doc. 13-2 at 42 (April 1, 2009 *Motion for Self Representation*).  In response, the Court admonished Petitioner, *inter alia*, that hybrid representation was not permitted and, while he had an absolute right to represent himself, there were many dangers and disadvantages of self-representation.  Doc. 13-6 at 9-10.  In response to the Court's concluding inquiry as to Petitioner's "desire" regarding representation, Petitioner requested an opportunity to confer with Mr. Weatherspoon.  And following a recess to permit him to do so, Petitioner advised the Court, "I'd rather Mr. Weatherspoon represent me," to which the Court inquired, "so Mr. Weatherspoon will continue as your counsel in this case," to which Petitioner unequivocally responded, "Yes, Ma'am."  Doc. 13-6 at 10-11.

Petitioner affirmatively abandoned his request to proceed *pro se* before jury selection and, thus, waived his right to self-representation.  *See McKaskle v. Wiggins*, 465 U.S. 168, 182

(1984) (a defendant who initially asserts his right to appear *pro se*, but later abandons the right by inviting participation of counsel, waives his right to represent himself.").  While Petitioner contends his decision to proceed to trial with the assistance of counsel was coerced by the trial court's "derogatory comments," Doc. 6 at 2, the trial court's warnings about self-representation, while blunt, were required and justified.  *See Faretta*, 422 U.S. at 835 (to properly assert right to self-representation, the defendant must knowingly and intelligently waive his right to counsel after being made aware of dangers and disadvantages of self-representation).  Moreover, the trial court was correct that having voluntarily relinquished his right to self-representation, Petitioner was not entitled to hybrid representation and, consequently, had no right to the court's determination of his *pro se* motions – including the motion for special needs counsel.[5]  *Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) (no right to hybrid representation in Texas).

Lastly, Petitioner asserts he was denied the right to represent himself on appeal and file a *pro se* PDR.  However, there is no constitutional right to self-representation on appeal.  *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.,* 528 U.S. 152, 161-163 (2000) (declining to extend the right to self-representation to a criminal defendant's direct appeal).  As such, this claim fails as a matter of law.  *See Garcia v. Stephens*, 793 F.3d 513, 520 n. 34 (5th Cir. 2015)

---

[5] Petitioner has not explained what he intends by the phrase "special needs counsel," nor has he pointed to any authority authorizing or requiring the appointment of the same.  Moreover, even if his invocation of the Americans with Disability Act was cognizable in this habeas action, he has indicated no disability, of which the trial court's failure to accommodate, impacted the outcome of his trial.

(citing *Lowrey v. Collins,* 988 F.2d 1364, 1367 (5th Cir.1993) (habeas relief available only for the deprivation of federal constitutional rights)).[6]

Because Petitioner has failed to establish that the state court's decision to deny claims 3 through 7, alleging ineffective assistance of trial and appellate counsel, was contrary to or involved an unreasonable application of clearly established precedent, those claims must also fail here.

3. <u>Prosecutor's Closing Remarks</u> (Claims 9, 10, 16)

Petitioner cannot establish that the prosecutor's closing statements were improper or amounted to prosecutorial misconduct.  "Prosecutorial misconduct is not a ground for [habeas] relief unless it casts serious doubt upon the correctness of the jury's verdict."  *See Styron v. Johnson*, 262 F.3d 438, 449 (5th Cir. 2001).  A prosecutorial misconduct claim requires a court to consider three factors: "1) the magnitude of the prejudicial effect of the [prosecutorial action]; 2) the efficacy of any cautionary instruction given by the judge; and 3) the strength of the evidence supporting the conviction."  *Id.*  "Only where improper prosecutorial [comments] substantially affect the defendant's right to a fair trial do they require reversal."  *Id.*

 A review of the record reveals that, contrary to Petitioner's assertions, the prosecutor did not relate alternative theories regarding the wounds on his hands during the guilt-innocence phase of the trial.   (Claim 16).  Rather he summarized the evidence presented at trial – namely Petitioner's own version of the events and the fact that Petitioner's story kept changing.  Doc.

---

[6] Moreover, as the state habeas court found, by accepting the assistance of counsel, Petitioner waived his right to present *pro se* briefs in support of the petition for discretionary review.  Doc. 14-13 at 65-66 (state habeas court findings following remand); *see Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1996).

13-9 at 41-43. *See Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988) (prosecutors can summarize the evidence, draw reasonable deduction from the evidence, respond to opposing counsel's arguments, and make a plea for law enforcement).[7]

Regarding the punishment phase, Petitioner asserts the prosecutor falsely commented that the victim did not have a criminal history and improperly argued to the jury: "when do you, as citizens of Dallas County, want to see this man walking among your streets?" Doc. 6 at 3-4 (Claims 9-10); Doc. 13-10 at 29. Petitioner's arguments lack merit, however. The trial court instructed the jury to disregard the first statement, *see Woods v. Johnson,* 75 F.3d 1017, 1036 n. 29 (5th Cir. 1996) ("Jurors are presumed to follow their instructions."), and the second statement was a proper plea for law enforcement. *See Hughes v. Quarterman*, 530 F.3d 336, 347 (5th Cir. 2008) (a proper jury argument may include "a plea for law enforcement"); *Borjan v. State,* 787 S.W.2d 53, 55-56 (Tex. Crim. App. 1990) (an appropriate "plea for law enforcement" may include statements about the "relationship between a jury's verdict and (1) the deterrence of crime in general; (2) the deterrence of specific crimes; (3) the impact it will have on the community at large; or (4) the impact it will have on narrower segments of the community").

In summary, any prejudice resulting from the first argument was cured by the trial court's instruction and the second argument was a proper plea for law enforcement. That notwithstanding, even if the second argument was improper, it was constitutionally harmless because, based on the considerable evidence of Petitioner's guilt, such a plea could not have had

---

[7] Petitioner's reliance on *Stumpf v. Mitchell*, 367 F.3d 594, 611 (6th Cir. 2004), *judgment rev'd in part, vacated in part sub nom. Bradshaw v. Stumpf*, 545 U.S. 175 (2005), is inapposite. Doc. 35 at 12. At Petitioner's trial, the prosecutor did not use inconsistent, irreconcilable theories to secure convictions against more than one defendant in a prosecution for the same crime. In any event, the United States Supreme Court reversed *Stumpf* for the above cited proposition.

a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1992). Thus, Petitioner has not shown that the state court's decision to deny his prosecutorial misconduct claims was contrary to, or involved an unreasonable application, of clearly established federal law. Accordingly, grounds for relief 9, 10 and 16 should be denied.

4.  <u>Ineffective Assistance of Counsel at Trial</u> (Claims 11-15, 17-21, 26-27)

The Court reviews ineffective assistance of counsel claims under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance," under *Strickland v. Washington*, 466 U.S. 668, 689 (1984), "through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoted cases omitted). In light of the deference accorded by section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. 86, 101.

To establish ineffective assistance of counsel at trial, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. 668, 687. The Court need not address both components if the petitioner makes an insufficient showing on one. *Id.* at 697. To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 689. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or that under the circumstances the challenged action might be considered sound trial strategy. *Id.* at 689. Under *Strickland*'s prejudice prong, a petitioner additionally must

demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Petitioner's grounds of ineffective assistance of trial counsel are conclusory and should be summarily dismissed. Doc. 1 at 9-13; Doc. 6 at 4-7. His bare assertions are vague and insufficient to plead a Sixth Amendment claim. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (declining to consider vague ineffective assistance of counsel claims). Without any specific allegation explaining that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced, Petitioner cannot raise an issue of constitutional import. Indeed, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Pineda*, 988 F.2d at 23 (quotations and quoted case omitted); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."); *West v. Johnson*, 92 F.3d 1385, 1399-1400 (5th Cir. 1996) ("the court need not blindly accept speculative and inconcrete claims") (quoted case omitted). Nevertheless, even when liberally construed, Petitioner's pleadings do not show that counsel's performance was deficient or that it prejudiced him.

Claim 11. As discussed above, Petitioner's first ten claims lack merit and, thus, Petitioner has failed to offer a non-frivolous basis for objection or mistrial. Doc. 6 at 4; *see Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness").

Claims 12, 18, 21 Petitioner does not present any factual support for counsel's alleged failure to investigate "a lesser included offense," an insanity defense, and other potential

suspects, such as Carlos Green.  Doc. 6 at 4, 6.  Allegations of a counsel's failure to investigate must include with specificity what the investigation "would have revealed and how it would have altered the outcome of the trial."  *See Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000).

Here, Petitioner offers no specific facts suggesting how counsel's investigation was deficient.  *See Strickland*, 466 U.S. 668, 689 (to establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness.").  He only vaguely references "multiple theories supporting accidental, self-defense or mental issues related to culpability."[8]  Doc. 6 at 4.  In his reply, he alleges that "[t]he prosecution . . . introduced the possibility of a lesser-included offense stateing [sic] that the petitioner 'injured himself trying to stop the bleeding to death of the deceased'" and that "the statement supports a crime of passion."  Doc. 35 at 8.  He also claims the "testimony from state's witness, Fredrick Henry, supports self-defense at best and sudden passion at worst 'he [petitioner] wanted whoever it was to leave him alone and they kept messing with him,' (R.R.4 p. 20) proving said provocation."  Doc. 35 at 9.

Regarding his putative insanity defense, Petitioner mentions a remote diagnosis of schizophrenia, which allegedly was aggravated by his hyperthyroidism.  Doc. 6 at 7; Doc. 35 at 8.  In his reply, Doc. 33-1 at 5, Petitioner relies for support on (1) a February 2009 psychiatrist's report finding that he was competent to stand trial, Doc. 13-2 at 34-36, (2) a February 2010 *pro se* motion requesting a psychiatrist evaluation, which included Dallas County Jail medical

---

[8] At trial, Petitioner testified that he acted in self-defense to ward off an attack against his person while he was asleep in complainant's house.  Doc. 13-8 at 170.

records reflecting "mental health issues first observed in 2005," Doc. 13-2 at 57-60; and (3) a

July 2010 *pro se* motion requesting mental health records.  Doc. 13-2 at 68; *see also* Doc. 35-1 at

13 (including same jail medical record).[9]

Even liberally construing Petitioner's claims, he fails to demonstrate how further

investigation would have uncovered or developed evidence of a lesser-included offense or an

insanity defense.  He also fails to demonstrate that additional investigation would have changed

the outcome of the case, namely that "but for counsel's unprofessional errors, the result of the

proceeding would have been different."  *Strickland*, 466 U.S. 668, 694.  Additionally, Petitioner

fails to show that he suffered from severe mental disease or deficiency at the time of the offense

that rendered him incapable of distinguishing between right and wrong.  *See* Tex. Pen. Code §

8.01(a) ("[i]t is an affirmative defense to prosecution that, at the time of the conduct charged, the

actor, as a result of severe mental disease or defect, did not know that his conduct was wrong.").

Indeed, the report of the psychiatrist who examined him before trial indicated that Petitioner

suffered from antisocial personality disorder, but no severe mental illness, and was competent to

stand trial.  Doc. 13-2 at 34.  Thus, Petitioner points to nothing in the record from which the

Court could conclude that an insanity defense would have any possibility of success.  *See United

States v. Pofahl*, 990 F.2d 1456, 1472-1473 (5th Cir. 1993) (failures to investigate and pursue an

insanity defense prejudice a defendant "only if it had prevented the presentation of a meritorious

---

[9] Petitioner states in his reply that at trial he "refered [sic] to the medical evidence on record and the fact that trial counsel deliberately deprived the petitioner of admitting the evidence: 'I said I have paperwork on the condition I mean, it's over there. I don't know why my attorney hasn't entered it into evidence yet. (R.R.4 p.162).'"  Doc. 35 at 8.  Contrary to Petitioner's assertion, the record reveals that the only medical condition at issue at trial was a "vision problem" and not a mental health issue.  Doc. 13-8 at 161.

defense of insanity").  Here, Petitioner's conclusory assertions are plainly insufficient to show *Strickland* prejudice.  *See Mallard v. Cain*, 515 F.3d 379, 383 (5th Cir. 2008) ("a conclusory assertion is insufficient to show prejudice under . . . *Strickland*.").

Claims 13-14.  Counsel lacked a non-frivolous basis to object to State witnesses Frederich Henry and Dr. Malik's allegedly conflicting and perjured testimonies.  Doc. 6 at 4-5. "[C]ontradictory trial testimony . . . merely establishes a credibility question for the jury," and does not suffice to establish that certain testimony was perjured.  *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).  Moreover, Petitioner's bare assertions do not establish that either Henry or Malik's testimony was perjured.  And because Malik was a rebuttal witness, counsel had no basis to object to his being permitted to testify due to the defense's lack of notice.

Claims 15.  The record does not support Petitioner's contention that, during closing argument, counsel improperly conceded his guilt and the validity of the enhancement allegations, and attacked his "character and credibility."  Doc. 6 at 5; Doc. 35 at 9.  Instead, throughout closing argument, counsel argued for a not guilty verdict presenting a two prong argument: (1) that based on the evidence the state could not prove beyond a reasonable doubt that Petitioner was responsible for the murder, and (2) that the case was really only about getting drugs – Petitioner was neither violent nor a bully, he only wanted to be paid for the drugs that he had provided, and he ultimately acted in self-defense when he was attacked.  Doc. 13-9 at 29-38. Consequently, when counsel told the jury "Perry is about drugs and money" and "all he wanted was his money," counsel did not attack Petitioner's character, but only sought to summarize the overwhelmingly negative evidence in a light more favorable to Petitioner.

Similarly, while counsel conceded the validity of the enhancement allegations during closing argument in the punishment phase of the trial, Doc. 13-10 at 25-26, he did so only after the Government had presented virtually irrefutable evidence of Petitioner's prior convictions (penitentiary packets containing certified judgments and fingerprints that an expert identified as those of Petitioner) and Petitioner testified that he did not care what sentence he received because his only recourse was appeal since he was not guilty. Doc. 13-10 at 8-13, 20. Clearly counsel's concession was an attempt at an equitable argument for a lesser sentence where the evidence did not favor it:

> Now, the last thing I want to leave you with is, in a way, the legislature has already punished Mr. Patterson, because if you read through the charge -- and there is a lot of legalese -- but if he didn't have any prior felony convictions, the punishment range would be five years to 99 years or life. And I'm going to be honest with you, yes has had the two convictions, we will concede to that. So that's the reason in voir dire we talked about the penalty range of 25 years to life. So the legislature has already punished him by telling him you can't go below 25.

Doc. 13-10 at 25-26. Petitioner has failed to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana,* 350 U.S. 81, 101 (1955)) . Consequently, Petitioner also has not shown that counsel's performance was deficient or that it prejudiced him.

Claim 19. Petitioner complains counsel made several false statements, which invited the prosecution to inject otherwise inadmissible evidence or attack Petitioner's credibility and, thus, prejudice the trial. Doc. 1 at 12; Doc. 6 at 6. Specifically, Petitioner references a statement by defense counsel during closing argument that Petitioner "touched his mouth and then touched the handle in the garage," which apparently was neither true nor advanced with Petitioner's

permission. Doc. 6 at 6; Doc. 35 at 10. Petitioner fails to identify any inadmissible evidence or credibility attacks that directly resulted from his counsel's alleged misstatements. *See Pineda,* 988 F.2d at 23 (declining to consider vague ineffective assistance of counsel claims). Moreover, that counsel sought to offer an alternative explanation to damning blood and DNA evidence is consistent with sound trial strategy and Petitioner has failed in his burden to demonstrate otherwise. *Strickland,* 466 U.S. at 689.

Claim 17. Petitioner also maintains counsel failed to introduce documents as requested by Petitioner. Doc. 6 at 6. Yet, he does not identify or produce the missing documents in either his petition or brief, Doc. 1 at 12, Doc. 6 at 6, and his reply generally references only medical records related to a vision problem (which Petitioner had accused counsel of failing to present). Doc. 35 at 10 (citing "R.R. 4 p. 162," available at Doc. 13-8 at 162). The appendix includes only three Dallas County Jail Health records: (1) a Medical Authorization mentioning "photosensitivity," (2) Chronic Clinic Notes noting several health conditions including hypertension, thyroid disorder, an infectious disease, mental health issues, a traumatic injury, heart conditions, asthma, schizophrenia, and history of seizure and migraine, and (3) a Consultation Note regarding a 2008 thumb injury. Doc. 35-1 at 12-15. Nevertheless, even assuming deficient performance, Petitioner has not shown that the outcome of trial would have differed had Petitioner's medical records been offered at trial.

Claim 20. Petitioner asserts counsel failed to suppress an illegally obtained pistol that was not described in the search warrant. Doc. 6 at 7. The evidence demonstrated that the pistol was found pursuant to a search warrant in a bedroom belonging to Petitioner, who, as a convicted felon, was prohibited from possessing the same. Doc. 13-10 at 16. Thus, as evidence of a crime

in plain view, it was of no consequence that the firearm was not included in the warrant's list of contraband to search for. That notwithstanding, through cross examination, defense counsel adduced testimony from the detective sponsoring the exhibit that there was no direct evidence tying the pistol to Petitioner or establishing that Petitioner had access to the pistol in relation to the murder. *Id.* at 16-17. And, while the judge subsequently misread the verdict form at trial to say that the jury found "a firearm was used or exhibited during the commission of the offense," Doc. 13-10 at 32, the judgment of conviction correctly reflected that the jury's "Findings on Deadly Weapon" was "YES, NOT A FIREARM." Doc. 13-2 at 115. Thus, even assuming counsel's performance fell below an objective standard of reasonableness, Petitioner cannot establish that he was prejudiced.

Claim 26. Petitioner maintains counsel failed to present evidence of self-defense, specifically that Petitioner was a certified self-defense instructor and the victim "had a history of starting fights." Doc. 6 at 9. That is inaccurate, however, as Petitioner himself testified about his expertise in taekwondo. Doc. 13-8 at 102. He has not indicated what other evidence of that fact was available or why it would be more than merely cumulative of his own testimony. Doc. 6 at 9; Doc. 35 at 10-11. Moreover, as Respondent correctly notes, any ineffective assistance claim regarding counsel's failure to offer evidence of the victim's violent record is unexhausted and procedurally barred and Petitioner has neither alleged nor shown cause and prejudice or a fundamental miscarriage of justice.[10] *See Ries v. Quarterman*, 522 F.3d 517, 523-524 (5th Cir. 2008) (failure to exhaust is generally a procedural bar to federal habeas review). Nevertheless,

---

[10] Contrary to Petitioner's assertions, ground 9 only complained about alleged prosecutorial misconduct – namely the prosecutor's false claim that the victim did not have an arrest record. Doc. 35 at 11-12; Doc. 14-14 at 19.

apart from claiming that the victim had a history of starting fights with men, Petitioner does not establish that the victim had a violent arrest record and, even if she did, that the outcome of the trial would have differed had the record been presented and admitted at trial.

Claim 27.  Petitioner claims a statement he gave to the police was coerced because he suffered an asthma attack and the police refused to give him his medicine.  Doc. 6 at 9; Doc. 35 at 12.  However, the statement about which petitioner complains was yet another of his prior inconsistent statements, and was not subject to exclusion as involuntary.  *Patterson v. State*, 2012 WL 3024220, at *1-4 (summary of trial testimony).  Moreover, Petitioner testified to his version of the events surrounding the statement.  Doc. 13-8 at 176, 179.  And the State offered evidence contradicting Petitioner's claim of coercion.  The interviewing detective testified that, although Petitioner requested asthma medication, he nevertheless continued giving his statement.  Doc. 13-7 at 154-155.  The weight and credibility given to the testimony and the statement was entirely within the province of the jury.  Consequently, counsel lacked any basis to object.

In summary, Petitioner cannot overcome the strong presumption that he received effective assistance of counsel at trial.  The state court's denial of relief on these grounds was a reasonable application of federal law and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

5.  Ineffective Assistance of Counsel on Appeal (Claims 23, 25)

Petitioner claims appellate counsel refused to withdraw or consult with him regarding the filing of the PDR, essentially depriving him of the opportunity to proceed *pro se*.  Doc. 6 at 7-8. The Court previously found there is no constitutional right to self-representation on appeal. Further, Petitioner cannot show that appellate counsel's performance was deficient and that it

prejudiced him.  *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (applying *Strickland* standard in evaluating the ineffective assistance of appellate counsel).  The state habeas court's determination that (1) Petitioner did not request to proceed *pro se* until after the PDR was denied, and (2) he did not advise appellate counsel of his desire to proceed *pro se* on PDR, Doc. 14-13 at 66, is entitled to a presumption of correctness.  28 U.S.C. § 2254(e)(1).  Petitioner has not produced clear and convincing evidence to rebut this finding.  Therefore, the state court's rejection of these claims is not contrary to or an unreasonable application of clearly established Federal law nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  These claims fail.

6.  <u>Jury's Request for Parole Information</u> (Claim 22)

Petitioner's contention that the jury engaged in misconduct by requesting parole information during jury deliberations in the punishment-phase is conclusory.  Doc. 6 at 7.  Mere conclusory allegations on a critical issue are insufficient to raise a constitutional claim.  *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).  Moreover, contrary to his assertions the mere mention of effects of parole law by a jury member during deliberation does not constitute jury misconduct.  *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006), quoting *De La Rosa v. Texas,* 743 F.2d 299, 304 (5th Cir.1984) ("Under Texas law, 'not every mention of parole during jury deliberations calls for reversal.' Only jury misconduct that deprives the defendant of a fair and impartial trial warrants granting of a new trial.").[11]  The state court's denial of this claim was not an unreasonable application of clearly established federal law.   Thus, this claim lacks merit.

---

[11] Petitioner relies on *Ashabranner v. State*, 557 S.W.2d 774 (Tex. Crim. App. 1977),  which was overruled by *Sneed v. State*, 670 S.W.2d 262 (Tex. Crim. App. 1984).

7.   Delay in Medication and Competency to Stand Trial (Claim 24)

As a result of a pretrial jail reassignment, Petitioner's hypertension medication was delayed, causing him to suffer from headaches and confusion and the inability to "follow or direct his defense." Doc. 6 at 8. This assertion is likewise conclusory. *See Koch*, 907 F.2d at 530 (conclusory allegations are insufficient to raise a constitutional claim). A review of the record reveals that Petitioner never complained at trial about a delay in receiving his hypertension medication or any resulting headaches or confusion. Additionally, both his responses to the court's pretrial inquiries and his trial testimony reflect clarity and understanding. Doc. 13-6 at 5-12, 14-15; Doc. 13-8 at 100-182; Doc. 13-9 at 20-23. Therefore, the state court's rejection of this claim was not objectively unreasonable.

8.   Speedy Trial (Claim 28)

Petitioner complains he was tried 26 months after he was arrested in violation of his right to a speedy trial.[12] Doc. 6 at 9; *see Barker v. Wingo,* 407 U.S. 514, 530 (1972) (in reviewing a speedy trial claim, the court must balance four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay). A 26-month delay, however, is insufficient to warrant a presumption of prejudice. *See Amos v. Thornton,* 646 F.3d 199, 206–207 (5th Cir. 2011) (reasoning that a delay of less than thirty months precludes the first *Barker* factor from "strongly favor[ing] the accused"); *Goodrum v. Quarterman,* 547 F.3d 249, 260 (5th Cir. 2008) (noting that a presumption of prejudice from delay alone "applies only where the delay is at least 5

---

[12] Petitioner was arrested on July 28, 2008, indicted on October 14, 2008, and the trial commenced on September 14, 2010. Doc. 13-2 at 7, 9; Doc. 13-6 at 1.

years").   Here, the record does not reflect any dilatory tactics by the State.  While Petitioner claims the prosecutor delayed the trial until (1) witness Frederich Henry could be incarcerated and forced to trial, and (2) the experienced trial judge was replaced by an inexperienced one, Doc. 35 at 13, his assertions are conclusory and void of factual support.  Moreover, the record reveals that Petitioner contributed to the delay by his lack of cooperation which forced his first counsel to move to withdraw in November 2009.  Doc. 13-2 at 51-53.  Additionally, Petitioner has made no showing whatsoever that he suffered prejudice from the delay in his case.  *See Goodrum,* 547 F.3d at 262 (vague and conclusory allegations are clearly insufficient to prove the prejudice required to support a speedy trial claim).  Petitioner has not shown that the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law.  Accordingly, this claim fails.

### A.  Evidentiary Hearing and Discovery not Required

Throughout the pleadings in this case, Petitioner requests an evidentiary hearing to develop his claims.  Doc. 5; Doc. 10; Doc. 35 at 6.  However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)).  Here, as in *Pinholster*, the petition concerns only claims under section 2254(d)(1) that were adjudicated on the merits in state court.  Petitioner cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court.  Accordingly, he is not entitled to an evidentiary hearing.

Petitioner has also submitted a number of discovery motions [Doc. 10; Doc. 20; Doc. 21; Doc. 31] and, in his reply, he requests the Court to reconsider the denial of all his prior motions

Doc. 35 at 1.  However, Petitioner has not demonstrated good cause to permit discovery.  *See* Rule 6 of the Rules Governing Section 2254 Proceedings for the United States District Courts (granting district courts discretion to authorize discovery only upon a showing of good cause); *see also Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997) (addressing good cause standard). "[T]o establish good cause, the petitioner must demonstrate that 'a factual dispute, if resolved in the petitioner's favor, would entitle him to relief and the state has not afforded the petitioner a full and fair evidentiary hearing.'" *Lave v. Dretke*, 416 F.3d 372, 381 (5th Cir. 2005) (quoting *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir.1994)).  Thus, he is not entitled to conduct discovery.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus be **DENIED**.

SIGNED November 7, 2016.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

     A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE